Richard Rome appearing for Mr. Howard this case arrives here after the district court denied a petition for rid of habeas corpus and ultimately this court certified for discussion whether there was incompetence of counsel and whether the state court reasonably applied the Strickland standard with the petitioner's Sixth Amendment rights. I had a question about the facts. Does the record indicate whether Mr. Howard's attorney made efforts to contact Mr. Raglan before Mr. Howard's trial? I don't know if he made an effort. I believe that in Mr. Raglan's declaration that he indicated that he wanted Mr. the trial attorney to contact him. I don't know whether he actually contacted him or not. I think the record is silent on that. Or made an attempt is really what my question surrounds because it deals with whether or not he was ineffective. I don't know that the record states whether he made an attempt, but I do know that the client requested that that attempt take place. There is nothing in the record about the Raglan encounters with the lawyer except for your client's comment that he wanted Raglan to be interviewed. No other court held a hearing on this subject. Is that right? Any court held a hearing on the subject of what, if anything, was done with respect to this witness and the attorney? I don't believe that there was, other than they had a Marsden hearing where the issue came up and there was a discussion about witnesses to be contacted. And I think that's probably what's contained in the record. And the Marsden hearing predated the trial. That's correct. And then all other judges at that point are making decisions based on the probation or the police report, which talks about Raglan as a witness. And your client's comments about what he wanted. But there's nothing else in the record about what was or was not done. Other than in Mr. Raglan's declaration, I believe that that's correct. Of course, there were two prongs to the issue that got certified here. The second, if I could switch over to that for a moment, unless there was any other questions with respect to whether Mr. Raglan would testify or not. I do have one more question. Yes. Now, he was being very uncooperative with the police and with the prosecution. Why wouldn't it be reasonable for his lawyer to assume that he would not be very helpful at trial? Well, I think when you're coming down to a case like this where there's so much at stake, there's so much time involved, you're looking at a sentence of 75 years to life, which is what he got, that it would be very important that you put him on the witness stand and say, he didn't shoot me. I mean, what better evidence would there be than the victim stating that it didn't happen? Particularly, what we have in this case is a one witness case in essence. Mr. Hernandez, who worked at the liquor store, basically is the key to the case, because the other quote-unquote eyewitness actually testified at trial that Mr. Howard did not do the shooting. So it came down to really one person against whatever was going to be put up against it, and it should have been everything. But your position is really two-pronged. One is the decision whether or not to put this man on the stand, but the other is the decision to interview him. That's correct. And is there any explanation as to why, well, we don't know whether he was even interviewed, as to whether he was interviewed, and certainly why one would not even try to do that? I don't think there's anything in the record that, and maybe I'll have a second thought when I sit down and mention it on my reply, but I don't think there's anything on the record as to the interviewing or not interviewing, other than a lot of reliance on this probation report that had been prepared and that subsequently with both state, all the state courts that reviewed it relied on that. Let's talk a minute about exhaustion. There are these, arguably there are two issues here, as my colleagues have pointed out. One of them is whether he was ineffective in failing to put Ragsdale on the stand, and the somewhat separate issue as to whether he was ineffective in failing to even interview Ragland to find out what he would say. Were both of those, insofar as they're different, were both of those properly exhausted? Were they presented to the, were both issues presented to the state court, or would you argue that they're just one issue? No, I think they were both presented in the state court. There were two state court opinions. There was the superior court decision, and then there was the court of appeal decision. Right. And you believe that the failure to interview issue was presented? I believe it was presented. I know that the district court addressed it. The issue of exhaustion never came up prior to your question.  The District Court has a dissention. It says, not receiving the question but not agreeing to the district court decision, and I'm looking at Superior Court, I mean, except for the District Court, I'm looking at Superior You have to point to something in the State Court, record. Which document are you quoting here? It says, trial counsel was ineffective in not interviewing initially for the Superior Court, and referring this.  What Mandal, did you have a word on that? I'm looking at E.R. 302. Yes. It is contained in that document. That's correct. So with respect to the question of exhaustion, it appears that it was exhausted in the State Court. I think we could make that argument. That's correct. This was the November 1st petition, which was held because the Secure Court's order doesn't seem to say much about it. But anyway, that's what you point to in terms of exhaustion. And I think that's what you're saying. Okay. You want to save the remaining two minutes for rebuttal? Yes. Could I address that second prong of our argument with respect to failing to call the expert, Your Honor? If you wish. The perhaps even more important, that issue is important. I think also very important is the defense lawyer's decision not to call an expert in a case that really should have turned on expert identification. Well, I have a question about that. How much weight should we give to the fact that the jury was given California Jury Instruction 2.92, which includes a laundry list of reasons why I witnessed that particular case, and that the testimony may not be reliable? Right. That's a very good question. And they were instructed with respect to the identification type of testimony. The distinction, though, and to answer your question, is that it's one thing to instruct the jury on what the law may be. It's quite another to put in additional evidence that an expert would have got on his eyewitness testimony. He was across the street. He was about 35, 40 feet away. There were discrepancies in the testimony that he had about the color of the car versus what one of the other witnesses said the color of the car. There were distinctions between the height of Mr. Howard that both witnesses, one of them said he was 5'7", another said he was 5'10". So there were definitely factors that an expert could have used to form an opinion to attack basically the only witness who got up and said he did it. But this is a different situation. At the Marsden hearing, it seemed clear that counsel had an expert. I think he said he was. He chose not to call one. Well, I think in there he said he was going to call one. Right. There was a discussion, and they talked about it. And I believe he said, I have a witness. I think he used the word I'm going to call. I'd have to go back and actually read it. I don't know why he didn't call. Because with the facts presented, there's no way that an expert couldn't have attacked that particular individual's identification. Now, the jury instructions are great. That's black-letter law. If we could have supplemented that with some factual information or some additional evidence, I think it would have been very helpful to the defendant. What's the Supreme Court case you rely on? Well, we're talking about Strickland? Well, it has to be more specific than Strickland. I mean, if... Well, we're relying on Strickland v. Washington for basically inefficient counsel and prejudicial result from that. So this would be an unreasonable application of Strickland? That's correct. I think that that's right. I mean, why you wouldn't put on an expert when somebody's looking at 75 years to life? What case would you rely on for saying that failure to find an eyewitness expert is ineffective? Other than... I would just... I don't have any other case other than to rely on Strickland at this point. There is the case that the Supreme Court just granted cert in. Our bank opinion... Well, we said a failure to call a blood spatter expert was ineffective, but the Supreme Court just granted cert in it, and I... So the outcome's in doubt. Well, hopefully it'll be positive. But I don't know the facts of that case, Judge Kuczynski, and I'd be... If the court wanted some briefing on it or something, I'm not familiar with the case that's sitting up there on... Was that out of the Ninth Circuit? I don't know. But was that a Ninth Circuit case? It was a Ninth Circuit case. I'd be glad to supplement if you didn't want any additional argument on that point. Not much to supplement. Okay. We have an in-bank opinion. Judge Reinhardt held it. We have a cert grant. I, uh, Hickman, Hickman, uh, Gerber... No, I'm sorry. I forget the name of the case. But we just granted cert a couple... A week or two ago. So that's in doubt. Okay. Why don't we, uh, hear from the State? Thank you, Your Honor. You're more than welcome. Good morning, Deputy Attorney General Catherine Combe. On behalf of Respondent Ken Clark. Um, just to address the Court's, um, concerns about the failure to... Any claim of failure to investigate. Um, there's simply no... There's no evidence that Ragland could have been found. Um, I think the probation report indicates... I couldn't hear what you said. There's no indication that Ragland could have been found. I think the probation report indicates that the... No indication of what? That Ragland, though I went... The victim, who was sort of a surviving victim, that he could be found. I think the probation report indicates that, um, the probation officer was having difficulty locating him. But obviously he was located. He did a declaration in the middle of the appeal that he would have testified for the defendant. Right, but I think that... That was after Petitioner found him in prison. Petitioner would not have been in prison at that time. You know, the probation officer was having difficulty finding him before trial, so... Is the issue of whether or not this man could be found, what he would have said before trial ever been fleshed out in an evidentiary hearing at any stage in the process? It has not, but I don't think it needs to be under Strickland. The question before the state court was whether or not trial counsel... You don't think the lawyer was at least required to make an effort to find him? Not in this case. He has the probation report that says Ragland's reluctant to identify the shooter, so he knows. He knows what Ragland's alleged testimony, or he has an inkling of what it could have been. But he also knows that Ragland is a documented gang member. He knows that he's going to have credibility issues. And frankly, Ragland's unpredictable. Unlike the state's witnesses, who are bishops of the Catholic Church? You take what you can get, Your Honor. Well, that's true of everybody. Right. Everybody takes what they can. Right. And in this case, trial counsel had... He had Fontaine's recantation. Are you seriously arguing on behalf of the state of California that having the single surviving victim of a shooting who is alive and is able to communicate but not even trying to talk to that person to see what the person will say is effective? Well, in this case, petitioner hasn't made any effort to show that trial counsel didn't attempt to locate Ragland. So we don't know that. There's no declaration from trial counsel. When would he have had a chance to do that? Well, he never... There's no indication he sought to get a declaration from trial counsel. Was he given a dividentiary hearing in state court? No. Okay. He did make the claim that counsel failed to find the witness, and the superior court didn't address the claim. And the court of appeal didn't address the claim. The court of appeal was just a one-sentence denial, right? Yes. And the superior court treats this as a failure to put on the witness. It does not deal with the diligence in looking for the witness, right? And I believe that's because... Yes or no? Yes. Okay. So this is a case where the state issue is raised in state court and the state court fails to even address it. Because it didn't need to. Okay. Sorry, Your Honor. You're talking. You can't listen and talk at the same time. I apologize, Your Honor. Okay? Because you don't know what I'm going to ask until I stop talking. See, when you cut in the middle, then you're not listening. I apologize. So by what standard do we evaluate a claim that was raised in state court and that the state court failed to address? It's still... You still give it deference because it's basically a silent denial on the part of the Los Angeles County Superior Court which addressed the failure to call the witness, but it had that investigation... It mentions the failure to call the witness, but it says nothing, as best I can tell. It's a three-page ruling on the failure to investigate. Nothing. It says absolutely nothing on the point. And do we deduce from that silence that the court disposed of the claim? I think that's a fair inference, Your Honor. And if we do that, which I'm not sure you're right about that, but let's say we do that, what do we assume to be our factual basis for adjudicating the claim? Well, you can conclude that the trial counsel wasn't required to conduct any additional investigation based on... I don't think you were listening to my question. What do we take as our factual basis? What facts do we assume? We assume that he didn't talk to the witness, right? That the lawyer didn't try to find the witness. Yes. Okay, so we take that as an assumption. Yes. And that he made no effort to find out what the witness would say. That he made no independent effort other than the investigation he conducted, reading the probation report, which indicates that the victim was a documented gay member, that he was reluctant to talk with police, that he was uncooperative with the prosecution, and likely to be uncooperative with the defense. I'm sorry. Where does the likely to be uncooperative with the defense come in? That's a fact that I missed in the probation report? No, but I think it's a fair inference. He's refusing to cooperate. He's a documented gay member. We're talking about facts, not inferences, facts. Okay. So he's uncooperative with the prosecution. He's uncooperative with the police. Yes. And he won't meet with the police. Now, why would a defense lawyer assume that somebody who's uncooperative with the police and the prosecution, why would the defense lawyer say, oh, that must be somebody who won't talk to the defense? Because he's a documented gay member who couldn't be found by the probation officer. So? We assume that he didn't go looking. Right? You've given that away. I think it's fair to infer from this record that trial counsel concluded that even if he could find Raglin, even if Raglin was willing to testify, and these are all big ifs, we can't take them for granted, that even if we get to that point, he wouldn't have wanted to call Raglin as a witness because Raglin is a documented gay member who's going to have credibility issues with the jury. He's the guy who got shot. He comes into court and says, this is not the guy who shot me. Now, what possible reason do you have for lying about something like that? But trial counsel can't count on him saying that. You want to set up a rule at time of this,  the deprivation of liberty to this extent depends upon a lawyer reading a probation report and making assumptions that if he went to try to get this guy or talk to this guy, he wouldn't be cooperative, that a lawyer should simply take the government's file essentially as a given and do no more? No, Your Honor. I'm saying that given this record, this particular record, trial counsel concluded that even assuming Raglin would still be reluctant to identify the shooter on the stand, that he wouldn't have wanted to call him as a witness. You agree that the record suggests that there was a the jury was deadlocked, that there was a indicated that they were deadlocked and then went back and finally convicted. So this is a situation where arguably additional evidence could have hung in the balance and made a difference? I would not concede that, Your Honor. You know, sometimes the court has said and we have said that failing to call a witness or failing to investigate a witness may be certainly to call is a strategic decision because the witness could be damaging in some way. Is there any way in which Raglin I mean, if he had said what he said in probation I don't recognize this guy. I don't know who the shooter was. Which happens. People get shot in the back. People get blanked out. They, you know, they get shot and they can't tell who shot them. But is there any damage he could have done to a defendant's case? I mean, the worst that could have happened he could have said I don't know who shot me. Would that have would that have caused any damage? I think the concern here is that Raglin is unpredictable and he could have easily gotten on the stand and changed his testimony and said or, you know, decided to cooperate with the prosecution and say he shot me. We have Fontaine who How does a lawyer know how likely that is without talking to the witness? Raglin is a What is the cost to the defense in spending I mean Again, you're talking while I'm talking. It's a very bad habit. I apologize, Your Honor. It's not a question of apologies. It's just poor lawyering on your part. I'm sorry, Your Honor. It really is. It just means you're not listening. I'm sorry, Your Honor. I'm trying to get a thought out and I apologize. May I continue or would you like to pose a question? If you want to answer my question now that you know you can guess what I was going to ask. I wanted to make the point that in the situation like this It's not a point that interests me but go ahead. Okay. You know Strickland the United States Supreme Court has said many times that whether or not to call a witness is within the tactical decisions of trial counsel and that was the law that the California State Courts were applying in this case. Calling a witness after you've interviewed the witness to begin with. What case do you have that says it's okay for the defense lawyer not to interview a key witness? There's no Not even find a key a potential exculpating key witness? I don't have a case that specifically makes that point. However, in this case because because trial counsel knows that Ragland is a documented gang member and that gang members are often reluctant to cooperate with police they're also reluctant to testify in court. Given those circumstances Is that an excuse for not trying to find him and asking him to? I think it's fair for trial counsel in this case to not have conducted further investigation knowing that Ragland was a gang member, yes. Do you concede that he made no attempt to even contact Ragland? No, Your Honor. I do not concede that because petitioner did not attempt to get a declaration from trial counsel stating whether or not he conducted any investigation regarding Ragland. But he asked for an evidentiary hearing at virtually every level of his habeas proceeding. He alleged no interview no calling and asked for an evidentiary hearing. Do you agree that no evidentiary hearing was held? I would definitely agree that no evidentiary hearing was held. So we don't know sitting here whether any efforts were made to contact this man? We do not know for certain now. So in order for you to win we'd have to say it's okay not to have held a hearing because it was not necessary on that issue, Your Honor? Yes. Assuming that applies when the State Court doesn't  the issue. Yes, Your Honor. Okay. Thanks. You eased up your time, but you can go ahead with your questions. I can have a minute for rebuttal if you choose to take it. It was always a bad idea, but I just wanted to make one point. I see many cases lost in rebuttal, but go ahead. In that case I'll waive my reply. No. You're the lawyer. The only thing I would say is that during the deliberations the jury did have a lot of back and forth and give and take. Asked about 2. 91 or there was a read back of that. They said they were deadlocked. It was a closed case, I guess. I don't have anything to add. Thank you. Case is argued. We'll stand submitted. We're here arguing the next case on the calendar. The address is submitted in the briefs.      been removed from the calendar. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank             you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank
judges: Gertner, Kozinski, Nelson D. W.